IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELINET OTERO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 10 CV 2284 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Selinet Otero ("Otero") sues Defendant City of Chicago (the "City") for hostile

work environment, sex discrimination, and retaliation pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e, et seq. Before the Court is the City's Motion for Summary

Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Otero has been employed as a police officer for the Chicago Police Department ("CPD")

since May 2001. In June 2002, she was assigned to work in the 14th District as a patrol officer.

She has also worked on special assignments and teams. From 2003 to 2004, Otero was assigned

to the Area 5 Saturation Team where assigned officers "were responsible to saturate certain

problem areas that reported high gang and drug activity." Def.'s Statement of Facts ¶ 16. In

2003, Otero was assigned to "Operation Angel" which involved officers posing as prostitutes.

Id. ¶ 17. Otero was assigned to and received training for the Gang Resistance Education and

Training ("GREAT") program in January 2007 or January 2008. In March 2008, Otero became

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed
facts within the text.

a member of the 14th District Tactical/Gang Team, and from June 2010 to September 2010, Otero was assigned to the 14th District Burglary Mission Team.

In 2004, Otero was partnered with Officer Tracey Graffeo ("Graffeo") at the 14th District. At that time, Sergeant Paul Jaske ("Jaske") was their superior officer. Otero alleges that Jaske began sexually harassing her in January 2004. Specifically, Otero alleges that Jaske referred to her "as 'G2' and her partner, Tracy Graffeo, as 'G1,' but Jaske told Otero he liked 'G1' better." Id. ¶ 30. Otero also alleges that Jaske called her and Graffeo "putzesses women." Otero admits that she does not know what either name means. Otero alleges that Jaske's comments were made both verbally and through the CPD's Personal Data Terminal ("PDT") system. Otero further alleges that Jaske would repeatedly ask her why Graffeo would not go out with him or go bike riding with him. Otero admits that Jaske never asked her out or asked her to spend time with him outside of work. Otero also concedes that she and Graffeo went to lunch with Jaske on multiple occasions from late 2003 to May 2004, and that Otero had lunch with him once by herself. Otero did not file or raise any claims of sexual harassment before May 2004.

On May 21, 2004, Otero and Graffeo were on patrol in a police vehicle. Otero alleges that on that day, Jaske ordered her and Graffeo to have lunch with him, but that they refused because they needed to get gas. According to Otero, she and Graffeo went to refuel their vehicle at Sunnyside and Cicero (the "Sunnyside station"), a gas station outside of the 14th District. Over the radio, Jaske ordered Otero and Graffeo not to get gas at the Sunnyside station and to return immediately. Otero states that, despite Jaske's order, they got gas at the Sunnyside station and then returned to the 14th District station. Upon their arrival at the station, Otero alleges that Jaske became angry with her and Graffeo and that he subsequently filed a complaint register ("C.R.") against them.

2

The parties dispute the motivations behind Jaske's filing of the C.R. The City claims that Jaske filed the C.R. against Otero as a result of her failure to follow a direct order when she refueled at the Sunnyside station outside of her district. Otero claims that Jaske filed the C.R. against her because she refused to go to lunch with him.

On May 26, 2004, Otero made her first complaint of sexual harassment against Jaske to the Office of Legal Affairs of the CPD "because she felt Jaske was using his power to discipline she and her partner because they would not go to lunch with him." Id. ¶ 29. Otero's complaint against Jaske was opened as a C.R. and combined with the C.R. that Jaske previously lodged against her, C.R. No. 298119.

In June 2004, the C.R. was assigned to Jennifer Detwyler in the Internal Affairs Department ("IAD") of the CPD. Otero gave two statements during the course of this investigation, one for the complaint that she filed against Jaske and the other in response to Jaske's complaint against her.

Upon completion of the investigation, Otero was given a one-day suspension for violations of CPD Rules—specifically Rule 6 for disobedience of an order and Rule 7 for "insubordination or disrespect toward a supervisory member on or off duty." Id. ¶ 24. Otero served her one-day suspension on January 15, 2007. "Jaske was found to have violated Department Rule 6 and to have transmitted non police related PDT messages in violation of General Order 97-06-09A." Pl.'s Statement of Additional Facts ¶ 7. However, "[a]fter a full investigation of Otero's complaint of sexual harassment against Jaske by the IAD, the complaint of sexual harassment was determined to be unfounded." Def.'s Statement of Facts ¶ 38. Otero maintains that her sexual harassment claims against Jaske were not properly investigated by the CPD, which the City disputes. Otero filed a Charge of Discrimination with the EEOC on

3

November 6, 2007, alleging "that she was discriminated against from January 2004 to November 5, 2007 because of her gender and retaliated against because she was sexually harassed and engaged in protected activity." Id. ¶ 5.

Otero attempts to allege that male officers from the 14th District used the Sunnyside station without being punished by supervisors, but fails to present any admissible evidence to support her assertion. Only admissible evidence will be considered on a motion for summary judgment. See Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) ("[A] court may consider only admissible evidence in assessing a motion for summary judgment."). Otero makes vague assertions that she has heard other unidentified male officers, under the direction of unknown supervisors, on the radio talking about using the Sunnyside station, and who were not thereafter punished. She also states that veteran Officer Dave Milligan offered her an unauthenticated letter saying that he had used the station without being punished. Otero admits that she does not have any personal knowledge "of whether any male officers under the supervision of Jaske were permitted to use the Sunnyside and Cicero fueling station without discipline." Id. ¶ 45. Otero's proposed evidence, supported only by her self-serving affidavit, constitutes inadmissible hearsay and cannot be considered in her opposition to summary judgment. See Carlisle v. Deere & Co., 576 F.3d 649, 655 (7th Cir. 2009) (stating that "to defeat a motion for summary judgment, [a party] may rely only on admissible evidence" and if "evidence is inadmissible hearsay, [courts] may not consider it"); Rogers v. City of Chi., 320 F.3d 748, 751 (7th Cir. 2003) ("[S]elf-serving affidavits without factual support in the record do not create a genuine issue of material fact.").

Additionally, Otero alleges various instances of discriminatory and/or retaliatory conduct occurring subsequent to May 2004. Generally, Otero claims that after the May 2004 incident and the filing of her sexual harassment claim, she was treated "different in the station by

supervisors that used to talk to us" and "could hear sometimes in the background people saying troublemakers." Def. Mot. for Summ. J. Ex. 1, pt. 1, at pp. 49:24, 50:1-4. Otero does not specifically state when this occurred. Nor does she specify who was involved, or speaking. After May 2004, Otero and Graffeo were no longer assigned as partners. Otero believes that she and Graffeo were separated in retaliation for her complaint against Jaske. Otero also alleges that in 2010, she saw the phrase "Otero swallows" written on a bathroom wall in the 14th District, along with the numbers "1-10." Otero does not know who wrote the words, but claims generally that she believes it was related to the May 2004 incident with Jaske.

Otero alleges three separate discriminatory and/or retaliatory instances specifically involving Jaske that occurred after the filing of her sexual harassment complaint against him. First, Otero alleges that at an unidentified time after the May 2004 incident, Jaske told her to stay in a certain room and not to come out. Otero does not know why she was asked to stay in the room and states only that "I guess he didn't want me in his area." Def. Mot. for Summ. J. Ex. 1, pt. 1, at p. 50:6-10. Second, Otero alleges that Jaske made her stay in a room to hand out radios and not leave to help with desk duty on the first floor. Otero claims that the person handing out radios would normally be allowed to assist with desk duty on the first floor. The City disputes that there is any such policy, and Otero testified that there is no official CPD policy allowing the person passing out radios to assist with desk work. Lastly, Otero alleges that in June 2004, Jaske would stand near her while she was working at the front desk and that it made her uncomfortable. Otero claims that she complained of this behavior to the Commander of the 14th District, Salvador Avila ("Avila"), and he offered to move her to a different shift. In September 2004, Otero was reassigned to a day shift at 35th and Michigan, while Jaske remained on a

midnight shift. Although Otero admits that she asked to be reassigned, she alleges that she was transferred in retaliation for her sexual harassment complaint against Jaske.

Otero also alleges that, subsequent to May 2004, she requested assignments to various special teams for which she was not chosen because of her gender and in retaliation for her complaint against Jaske. Otero states that special team assignments are not posted and officers request assignments to special teams by submitting a memorandum to a fellow officer. Otero admits that "Jaske did not have any decision-making authority over selection for special assignments." Def.'s Statement of Facts ¶ 52. Avila, Otero's 14th District Commander, "testified that he could not recall receiving assignment requests from Otero during the time that he was the 14th District Commander." Id. ¶ 53. Officers are chosen for special teams based on "seniority, experience, disciplinary history, and the recommendation of supervisors." Id. ¶ 60. Otero admits that assignments to special teams are temporary and do not involve a change or increase in salary or seniority. However, Otero alleges that, by being denied assignments to special teams, she was unable to build her resume or portfolio the way it "should have looked." Id. ¶ 58.

In June 2006, Otero states that she requested to join the Area 5 Tactical/Gang Team, but was denied. Otero alleges that, Officer Corona, a male officer with more seniority than she, was selected for the team. In 2006, Otero was recommended to, but not chosen, for assignment to the 14th District Tactical/Gang Team. Otero admits, however, that she was later assigned to the team in 2008. In May 2007, Otero requested and was denied assignment to the Community Area Policing & Strategy ("CAPS") office. Otero alleges that two male officers, Trevino and Garza, were selected instead. Finally, in 2008, Otero was denied an assignment to the 14th District Burglary Mission Team. Otero alleges that a male officer, Leon, was chosen for this team. It is

undisputed that Otero was told she could not be on the Burglary Mission Team because she had already been chosen for the GREAT program. Otero was eventually assigned to the 14th District Burglary Mission Team in 2010.

Otero complained about her lack of assignment to special teams during the May 2004 investigation and in her EEOC charge; however, Otero never filed a grievance or complaint following her denial to any specific team.

Following her complaint to the EEOC, Otero was issued a Notice of Right to Sue on January 15, 2010. Otero, initially proceeding pro se, filed her first complaint on April 14, 2010. After obtaining counsel, Otero filed her Amended Complaint on September 2, 2010. The instant motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "[F]actual disputes must be both material and genuine. . . . And a factual dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Carroll v. Merrill Lynch, 698 F.3d 561, 564 (7th Cir. 2012) (internal quotation marks and citations omitted). There are no genuine issues of fact when "'defendants would be entitled to summary judgment even assuming the truth of [plaintiff's] version of the incident.'" Id. at 565 (quoting Outlaw v. Newkirk, 259 F.3d 833, 838 (7th Cir. 2001)). If the nonmovant "is unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322) (alterations in original).

## B.  Administrative Exhaustion

Otero claims that the City, through the CPD, subjected her to a hostile work environment by way of sexual harassment, discriminated against her on the basis of sex, and retaliated against her for filing a sexual harassment complaint and an EEOC charge. The City argues that many of the instances that Otero describes as hostile, discriminatory, and/or retaliatory are time-barred.

"To bring a Title VII claim, a plaintiff must file an EEOC charge within 300 days of the conduct underlying the claim" and any conduct occurring "more than 300 days before the relevant EEOC charge is time-barred." <u>Moore v. Vital Prods.</u>, 641 F.3d 253, 256 (7th Cir. 2011).

Because Otero did not file her complaint with the EEOC until November 6, 2007, any conduct that occurred before January 10, 2007 is time-barred, unless she can show that it constitutes a continuing violation. The continuing violation exception to the limitations period "is designed to accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered . . . timely." <u>Hardin v. S.C. Johnson & Son, Inc.</u>, 167 F.3d 340, 344 (7th Cir. 1999) (internal quotation marks and citation omitted). "Pre-limitations period conduct does not become actionable, however, merely because a plaintiff brings a timely suit on a limitations period violation." <u>Hall v. Bodine Elec. Co.</u>, 276 F.3d 345, 353 (7th Cir. 2002)

"A plaintiff 'may not base her . . . suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct. . . .'" <u>Id.</u> (quoting <u>Galloway v. Gen. Motors Serv. Parts Operations</u>, 78 F.3d 1164, 1167 (7th Cir. 1996)). However, a plaintiff may base her suit on conduct outside of the limitations period if it "could constitute, or be recognized, as actionable harassment only in light of events that occurred later, within the period of the statute of limitations" and "when, after an initial incident of discrimination, a plaintiff does not feel sufficient distress to . . . make a federal case." <u>Id.</u> (internal quotation marks and citations omitted). "A continuing violation theory requires at least one viable charge within the appropriate limitations period." <u>Speer v. Rand</u>

. . . . .

McNally & Co., 123 F.3d 658, 663 (7th Cir. 1997) (internal quotation marks and citation omitted).

### 1. Hostile Work Environment

Otero alleges various encounters with Jaske from January 2004 to June 2004 which she argues were sexually harassing, creating a hostile work environment. Six years later, in 2010, Otero alleges only that she saw, "Otero swallows" with the numbers "1-10" written on the bathroom wall. While Otero assumes that the writing was related to the 2004 incidents with Jaske, she provides no evidence to support her belief.

Furthermore, Otero could have filed an EEOC complaint in 2004 when she filed her complaint with the CPD. Otero states that she filed her complaint with the CPD on May 26, 2004 because the alleged sexual harassment "affect[ed] [her] directly" after the May 2004 re-fueling incident. Def.'s Mot. for Summ. J. Ex. 1, pt. 1, at p. 107:22-24. Because Otero admits that she was sufficiently affected by, and aware, of her claim in May 2004, she cannot now claim that she did not "recognize" or "feel sufficient distress" by the harassment until she filed her EEOC complaint in 2007. Hall, 276 F.3d at 353. She fails to show a pattern or policy of discrimination continuing from 2004 to 2010. Accordingly, the 2004 incidents do not constitute a continuing violation, and therefore, are dismissed as time-barred.

### 2. Sex Discrimination

With respect to Otero's sex discrimination claim, she alleges that, because she is female, she was denied from assignments to the Area 5 Tactical/Gang Team in June 2006, the 14th District Tactical/Gang Team in 2006, the CAPS office in May 2007, and the 14th District Burglary Mission Team in 2008. Only Otero's denial for the CAPS office and the 14th District Burglary Mission Team are within the requisite statutory period. Because she could have filed a

complaint each time she was denied an assignment, the prior discrete acts cannot be included under the continuing violation theory. Otero's alleged discriminatory denials occurring in 2006 are dismissed as time-barred.

### 3. Retaliation

To the extent that Otero also alleges that she was denied from the aforementioned special assignments in 2006 in retaliation for filing a sexual harassment complaint and an EEOC charge, those claims are likewise dismissed as time-barred as to her retaliation claim.

Otero further alleges that she was separated from her partner in May 2004 and transferred to the day shift in September 2004 in retaliation for filing her sexual harassment against Jaske. However, Otero fails to provide any evidence to support those claims. In any event, even if Otero could prove the allegations, they are nonetheless time-barred because the alleged conduct occurred more than 300 days before Otero filed her EEOC charge. The incidents cannot be considered a continuing violation because Otero was aware of her claims stemming from the incident with Jaske in 2004, as evidenced by the complaint she filed with the CPD, and could have filed a charge with the EEOC at that time as well. Accordingly, the alleged incidents occurring before January 10, 2007 are outside the statutory filing period and do not meet the continuing violation exception, and therefore, are dismissed as time-barred.

## C. Hostile Work Environment

Otero's remaining hostile work environment claim alleges sexual harassment when she purportedly saw the words "Otero swallows" along with the numbers "1-10" written on the bathroom wall in the 14th District. To establish a claim for hostile work environment based on sexual harassment, "a plaintiff must present evidence from which a jury could reasonably conclude that she was (1) subjected to unwelcome sexual conduct, advances, or requests;

(2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." Erickson v. Wis. Dep't of Corr., 469 F.3d 600, 604 (7th Cir. 2006).

It is undisputed that the phrase "Otero swallows" meets the first two requirements for a hostile work environment claim. However, the City argues that Otero is unable to show, or create a genuine issue of material fact, as to whether the conduct was "severe or pervasive" enough to constitute a hostile work environment, and whether there is a basis for employer liability.

"To rise to the level of an actionable hostile work environment, the complained-of conduct must have been sufficiently severe or pervasive to have altered the conditions of her employment such that it created an abusive working environment." Passananti v. Cook Cnty., 689 F.3d 655, 667 (7th Cir. 2011). "To qualify as 'hostile,' the work must be 'both objectively and subjectively offensive. . . .'" Rhodes v. Ill. Dep't of Transp., 359 F.3d 498, 505 (7th Cir. 2004) (quoting Hilt-Dyson v. City of Chi., 282 F.3d 456, 462-63 (7th Cir. 2002)). Factors to consider include: "the severity of the allegedly discriminatory conduct, its frequency, whether it was physically threatening or humiliating or merely offensive, and whether it unreasonably interfered with the employee's work performance." Passananti, 689 F.3d at 667. "Offhand comments, isolated incidents, and simple teasing do not rise to the level" of a hostile work environment. Id.

The phrase "Otero swallows" does not rise to the level of objectively offensive, as it is more akin to a stray vulgar remark that is not physically threatening and would not alter the conditions of her employment. See Kampmier v. Emeritus Corp., 472 F.3d 930, 941 (7th Cir. 2007) ("The 'occasional vulgar banter, tinged with sexual innuendo of coarse or boorish

workers' generally does not create a work environment that a reasonable person would find intolerable." (quoting Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995)). Otero attempts to argue the frequency of the alleged harassment by suggesting that the words in the bathroom are related to the 2004 incidents with Jaske, however, the facts show that the incidents are more than six years apart. Moreover, Otero offers no facts to suggest who wrote the words, when it was written, in which bathroom of the 14th District it was written, nor why it was written. Otero offers only her self-serving, conclusory statement based on her own speculation that the conduct was related to the May 2004 incident with Jaske. Although one incident of harassment can constitute a hostile work environment if it is sufficiently egregious, these words do not rise to that level. See Lapka v. Chertoff, 517 F.3d 974, 983 (7th Cir. 2008). Without more, Otero is unable to establish a prima facie case of hostile work environment.

Furthermore, even if the Court considered the 2004 time-barred conduct involving Sergeant Jaske, Otero still fails to establish a prima facie case of hostile work environment. Otero cannot establish a basis for employer liability. "Once aware of workplace harassment, 'the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent harassment from recurring.'" Vance v. Ball State Univ., 646 F.3d 461, 471 (7th Cir. 2011) (quoting Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 978 (7th Cir. 2004)). A "prompt investigation is the hallmark of reasonable corrective action." Id. at 473 (internal quotation marks and citation omitted). "[T]aking effective steps to physically separate employees and limit contact between them can make it 'distinctly improbable' that there will be future harassment." Lapka, 517 F.3d at 985. "The measures taken by employers will often 'not meet the plaintiff's expectations'" but "Title VII requires only that

the employer take steps reasonably likely to stop the harassment." Id. (quoting Berry v. Delta Airlines, 260 F.3d 803, 813 (7th Cir. 2001)).

Here, it is undisputed that once Otero complained of sexual harassment on May 26, 2004, a C.R. was opened and investigated by the Internal Affairs Department of the CPD. At the conclusion of the investigation, Jaske was found to have violated Rule 6 of the CPD and to have misused the PDT system to transmit non-police related business. However, the allegations of sexual harassment were determined to be unfounded. Otero generally alleges that the investigation was improper and that more witnesses should have been interviewed, but fails to present any evidence to support her claims. Furthermore, Otero admits that she was transferred off of Jaske's shift to a day shift where she no longer worked with him. Based on the uncontroverted facts, there was a prompt investigation following Otero's complaint based on the longstanding policy of the CPD, and future harassment was reasonably prevented when Otero was moved to a different shift shortly after the incident. Therefore, Otero fails to show that there is a basis for employer liability. In addition, Otero fails to offer any evidence to show that there is a basis for employer liability as to the phrase written on the bathroom wall. Accordingly, Otero fails to establish a claim for hostile work environment.

**D. Sex Discrimination**

Next, Otero alleges sex discrimination against the City. Pursuant to Title VII, "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

To establish sex discrimination, Otero must present evidence through either the direct or indirect method. Otero does not present any direct evidence of sex discrimination and therefore

proceeds only under the burden-shifting method prescribed by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To survive summary judgment under either method, Otero "must create at least an inference of illegal discrimination." Greene v. Potter, 557 F.3d 765, 769 (7th Cir. 2009) (internal citation and quotation marks omitted); see also Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999) ("Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of discrimination may be drawn.").

Under the indirect method, Otero must establish that "(1) she is a member of a protected class, (2) she met her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." Everroad v. Scott Truck Sys., Inc., 604 F.3d 471, 477 (7th Cir. 2010). If Otero demonstrates prima facie discrimination, the burden shifts to the City to "produce a legitimate, noninvidious reason for its actions." Atanus v. Perry, 520 F.3d 662, 672 (7th Cir. 2008). If the City is able to provide such a reason, "the burden then shifts back to [Otero] to show that the [City's] reasons 'are false and only a pretext for discrimination.'" Id. (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997)).

### 1. One-Day Suspension

First, Otero alleges that she was discriminated against when she received a one-day suspension for using the Sunnyside station, when male officers allegedly used the station without reprimand. It is undisputed that Otero is a member of a protected class, however the parties dispute whether Otero provides evidence to establish all of the elements essential to her discrimination case under the indirect method. Fatal to her claim, Otero fails to provide any admissible facts showing that the similarly situated requirement has been satisfied. Eaton v. Ind. Dep't of Corr., 657 F.3d 551, 558 (7th Cir. 2011). "In the usual case a plaintiff must at least

show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Coleman v. Donahoe, 667 F.3d 835, 847 (7th Cir. 2012) (internal quotation marks and citation omitted).

Otero's proposed evidence regarding the use of the Sunnyside station without punishment by Officer Milligan, and other unknown male officers from the 14th District, is inadmissible hearsay improperly supported by Otero's self-serving affidavit. Even if the evidence were admissible, however, Otero fails to establish Officer Milligan and the unknown officers as suitable comparators. Otero's evidence of unnamed male officers, dealing with unknown supervisors, is facially deficient to allow for an appropriate comparison. Otero's proposed evidence also fails to establish Officer Milligan as an appropriate comparator as she notes that he is a veteran officer who was not necessarily under the supervision of Jaske as she was. Accordingly, Otero fails to establish a prima facie sex discrimination claim on the basis of her one-day suspension.

### 2. Otero's Remaining Allegations of Sex Discrimination

Otero alleges that she was denied admission to the CAPS office in May 2007 and the 14th District Burglary Mission Team in 2008. However, she fails to provide appropriate comparators for any of the alleged improperly denied assignments. Otero provides only the last names of male officers whom she alleges were chosen for the teams. She fails to provide any evidence as to the qualifications, history, or experience of the various male officers. Nor does Otero show under whose supervision the male officers worked. Without any information about the alleged comparators, Otero cannot establish that someone similarly situated received better

treatment and assignments. Additionally, Otero admits that she was told that she could not join the CAPS office in 2007 because she was already a member of the GREAT program, but fails to provide the names of any officers, as proposed comparators, who were allowed to work simultaneously on both teams.

Furthermore, Otero admits that the special assignments were only temporary positions that did not result in higher pay or seniority and were not considered a promotion. See Everroad, 604 F.3d at 480 ("A purely lateral move to a new position, a transfer that does not involve a demotion in form or substance, cannot serve as an adverse employment action. Neither does a transfer involving no reduction in pay and no more than a minor change in working conditions qualify as an adverse employment action." (internal quotation marks and citation omitted)). As such, Otero's denials from the assignments do not constitute adverse employment actions. See Porter v. City of Chi., 700 F.3d 944, 954 (7th Cir. 2012) ("[A]n adverse action must materially alter the terms and conditions of employment" and examples include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." (internal quotation marks and citations omitted)).

Although Otero alleges that she was unable to build her resume the way in which she would have liked, "not everything that makes an employee unhappy is an actionable adverse action." Id. (internal quotation marks and citation omitted). Otero analogizes her case to Lewis v. City of Chicago, 496 F.3d 645 (7th Cir. 2007), where the court found a genuine issue of material fact as to whether the plaintiff, a female police officer, suffered an adverse employment action when she was not chosen for a special team working a two-day large scale International Monetary Fund ("IMF") event in Chicago. The possible adverse action included loss of "two

days of overtime," "loss of the experience of training on the IMF detail that she claims to be a 'once in a lifetime' training event," and loss of future employment to similar events due to lack of experience. Lewis, 496 F.3d at 653. The instant case is distinguishable. Otero admits that the special teams did not result in any increase in pay or seniority. More importantly, she was selected for other special teams for which she received training during the period at issue— namely, the GREAT program—and she was eventually chosen for two of the assignments from which she was previously denied only a few years later. Therefore, Otero has shown that she did not lose any future employment due to lack of experience. For these reasons, Otero fails to show that she suffered an adverse employment action.

In sum, Otero fails to establish a prima facie case of sex discrimination. Accordingly, the City is granted summary judgment on Otero's sex discrimination claim.

## E. Retaliation

Lastly, Otero alleges a retaliation claim against the City. Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To defeat a motion for summary judgment on a retaliation claim, Otero must provide "sufficient evidence of retaliation through either a direct or indirect method." Silverman v. Bd. of Educ., 637 F.3d 729, 740 (7th Cir. 2011). Otero ostensibly alleges retaliation through both the direct and indirect method.

### 1. Direct Method

Under the direct method of proof, Otero must be able to show through either direct or circumstantial evidence: "(1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two." Id. While direct evidence "essentially requires an admission by the employer . . . circumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." Harper v. C.R. Eng., Inc., 687 F.3d 297, 307 (7th Cir. 2012) (internal quotation marks and citation omitted).

The City concedes that Otero was engaged in protected activity when she filed her sexual harassment complaint against Jaske in May 2004 and when she filed her complaint with the EEOC in November 2007. At issue is whether Otero establishes an actionable adverse employment action and a causal link between that and her protected activity. Otero alleges that she suffered adverse employment actions in retaliation for her protected activity when she was denied assignments to special teams. As discussed above, none of Otero's failed attempts to be assigned to special teams constitute adverse employment actions under Title VII. It is true that "[t]he standard for a materially adverse action sufficient for a retaliation claim is somewhat more forgiving than for a discrimination claim." Barton v. Zimmer, Inc., 662 F.3d 448, 456 (7th Cir. 2011). However, Otero's alleged adverse employment actions are not "severe enough to dissuade a reasonable employee from exercising statutory rights." Id. Indeed, the evidence shows that Otero was not dissuaded from exercising her rights, as she filed her EEOC charge three and a half years after she filed her sexual harassment complaint. Accordingly, Otero fails to show that she suffered an adverse employment action.

Even if Otero's rejection from the special assignments could be considered adverse employment actions, she fails to establish a causal connection between her sexual harassment complaint and the rejections. Otero attempts to provide various pieces of circumstantial evidence which she claims establish a causal connection. Otero alleges that she was qualified for the positions from which she was rejected and thus the timing is suspicious, and that similarly situated male officers were treated more favorably by being assigned to the positions from which she was denied. The Court rejects Otero's "suspicious timing argument" as nonsensical, and has already determined that Otero's proposed "similarly situated male officers" are not appropriate comparators as she provides no information about them or the positions. Otero also alleges that ambiguous statements were made with regard to her applications to the special teams; however, such statements are based on hearsay and are thus inadmissible to create a genuine issue of material fact as to a causal connection. "The record is simply void of the bits and pieces of circumstantial evidence necessary to establish a causal link . . . ." Overly v. Keybank Nat'l Ass'n, 662 F.3d 856, 866 (7th Cir. 2011).

Furthermore, Otero fails to provide any evidence that anyone in a decision-making capacity with regard to the special assignments had any retaliatory animus against her. The "cat's paw" theory provides that "it is appropriate to impute discriminatory or retaliatory animus to a decisionmaker when the party nominally responsible for a decision is, by virtue of her role in the company, totally dependent on another employee to supply the information on which to base that decision." Hicks v. Forest Pres. Dist., 677 F.3d 781, 790 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, Otero admits that Jaske was not involved in the decision-making process with regard to any of her applications to special teams. Further, she fails to show that Jaske had any influence over those making the selections for special teams. Otero

merely argues, in her self-serving affidavit, that officers who file complaints "are not treated well and are retaliated against." Pl.'s Resp. to Def.'s Statement of Facts Ex. A, at ¶ 19. This unsupported statement is insufficient to constitute circumstantial evidence that those in a decision-making capacity had any retaliatory animus towards Otero in rejecting her requests to join various special teams. See Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010) ("[M]ere conclusory allegations do not constitute evidence."). Thus, Otero fails to establish retaliation under the direct method of proof.

### 2. Indirect Method

Under the indirect method, a prima facie case of retaliation is established by showing that: "(1) [s]he engaged in a statutorily protected activity; (2) [s]he met [her] employer's legitimate expectations, i.e., [s]he was performing [her] job satisfactorily; (3) [s]he suffered a materially adverse action; and (4) [s]he was treated less favorably than some similarly situated employee who did not engage in the statutorily protected activity." Harper, 687 F.3d at 309. "Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason" for the retaliation. Id. "If the defendant meets its burden, the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual." Id. For the same reasons discussed above, Otero cannot establish a prima facie case of retaliation under the McDonnell framework because she provides no evidence that she suffered from an adverse employment action or that she was treated less favorably than other similarly situated employees. Therefore, Otero also fails to establish a retaliation claim under the indirect method of proof.

## III. CONCLUSION

For the foregoing reasons, the Court enters summary judgment for the City on all of Otero's hostile work environment, sex discrimination, and retaliation claims.

IT IS SO ORDERED.

ENTER:

_Charles Norgle_

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 6, 2013